UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JEFFREY HUNTLEY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-10-10 |
| | § | |
| BAYER MATERIALSCIENCE, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

Before the Court are the defendant, Bayer MaterialScience, LLC's ("Bayer") motion for summary judgment, attachments and exhibits (Document No. 13), the plaintiff, Jeffrey Huntley's response and attachments (Document No. 23),  Bayer's reply and supplement (Documents Nos. 25 and 27) and the plaintiff's sur-reply (Document No. 26).  The Court has examined the motion, reply, response and attachments and relevant documents and determines that Bayer's motion for summary judgment should be granted.

**II.    FACTUAL BACKGROUND**

The plaintiff was employed by Bayer at its Baytown Facility on a railcar switch crew as a site logistics technician in February 29, 2008, when he sustained an injury to his leg.  His job duties "involved sorting rail cars using a switch engine on a rail spur" within the Facility in order to deliver to various process areas of the plant, railcars for loading and unloading various materials.  On the occasion, the plaintiff was serving as a production technician.  He contends that various companies that operate either in or in conjunction with Bayer and, specifically, Harold Vaughn, were in control of the apparatus and appurtenances of the train that injured his legs.  Specifically, the plaintiff was serving as a groundman on tracks 601 through 604 while

Vaughn was operating the switch engine.  Vaughn was pulling cars so that the plaintiff could check the brakes on each car when he heard the plaintiff call for help.  Vaughn left the switch engine to check on the plaintiff and found the plaintiff beneath one of the rail cars.  The plaintiff had undetermined damage to one leg while the other was permanently damaged.

## III.   PROCEDURAL HISTORY

The plaintiff originally sued Bayer and several other defendants that operate railcars at the Baytown Facility in the 136th Judicial District Court of Jefferson County, Texas.  Bayer filed a motion to transfer the case based on venue and it was transferred to the 189th Judicial District Court of Harris County, Texas.  There, Bayer filed a motion for summary judgment.  However, before the motion could be heard, the plaintiff filed a motion for nonsuit and his case was closed.  Shortly thereafter, however, the plaintiff filed this suit in federal court, alleging as a basis for relief the Federal Employers Liability Act [FELA] and as an additional basis, a claim under the Texas Railroad Liability Act [TRLA].

The records in the case include a document indicating an election by the plaintiff to receive workers' compensation which election was made at the beginning of his employment on September 28, 2005.  *See* [Exhibit 2; Document 13-7].  Bayer asserts that the plaintiff never opted out of that coverage as he was obligated to do in order to seek relief under the TRLA or the FELA.

## IV.   CONTENTIONS OF THE PARTIES

### A.   Bayer's Contentions

First, Bayer contends that summary judgment is appropriate in its favor because the plaintiff cannot assert a cause of action under the FELA, having chosen coverage for job related injuries under the Workers' Compensation Act.  Secondly Bayer argues, the plaintiff is receiving

workers' compensation benefits for his injuries.   Hence, Bayer asserts that workers' compensation benefits are the plaintiff's exclusive remedy, thereby barring recovery under the TRLA or the FELA.

Bayer also asserts that it is not "a common carrier" as that status is defined in law because:  "(1) its limited rail activities occur entirely within its property and are not part of an interstate railroad system; (2) it does not transport for the general public; (3) it does not share common ownership with a railroad or hold itself out as a public transporter; and, (4) it is not compensated by a railroad for any services it provides…."  *See Lone Star Steel Co. v. McGee*, 380 F.2d 640, 647 (5th Cir.) *cert. denied* 389 U.S. 977 (1967).

### B.    The Plaintiff's Contentions

The plaintiff does not dispute that Bayer is a workers' compensation subscriber or that he is covered and currently receiving benefits under the Act.  Instead, the plaintiff asserts that Bayer has "acted, and continues to act, as a common carrier" and is therefore liable under the FELA.  Secondly, the plaintiff contends that the acceptance of workers' compensation benefits does not preclude recovery under the Act.  Finally, the plaintiff argues, Bayer was the owner/operator of the locomotive involved in the accident; therefore, Bayer should not be dismissed because as a fact question exists as to whether Bayer is a "common carrier" and subject to the FELA.

The plaintiff directs the Court to the testimony of various Bayer employees as a basis for its contention that Bayer is a common carrier.  The plaintiff argues that Bayer has "two locomotives and at any given time within the plant there can be 275 and 425 railcars [present] from the [Bayer] fleet."  The plaintiff points out that there are in excess of 1800 railcars in the Bayer fleet and that the two locomotives move from 10,000 to 12,000 railcars on an annual basis.  When these cars are loaded, they are moved throughout the state of Texas and outside Texas by

several independent railroads; hence, by participating in transporting cargo outside its "intra-rail" facility, Bayer behaves like a common carrier.

## V.   **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted.  *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006).  Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial." Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164.  To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377,

380 (5th Cir. 1998).  In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson,* 477 U.S. at 255.

## VI.   <u>ANALYSIS AND DISCUSSION</u>

The parties have cited to innumerable cases in support of their positions.  However, the Court is of the opinion that the herein discussed cases are dispositive of the case.  Both parties are familiar with and cites to *Edwards v. Pacific Fruit Express Co.*, 390 U.S. 538 (1968); *Kieronski v. Wyandette Terminal R.R. Co.*, 806 F.2d 107 (6th Cir. 1986); and *Lone Star Steel Co. v. McGee*, 380 F.2d 640, 647 (5th Cir.) *cert. denied* 389 U.S. 977 (1967).

In *Edwards*, an employee brought suit against his employer under the FELA asserting that his employer was a "common carrier by railroad."  The employee sought to establish that his employer was engaged in interstate commerce utilizing refrigerator cars to transport its products throughout the states via railroad.  Pacific Fruit, the employer, owned, maintained and leased refrigerator cars to railroads to transport its products.  It repaired its own cars, owned buildings, plants, switching tracks and the equipment to maintain its equipment and tracks.  Edwards was an iceman at one of Pacific Fruit's plants and, while performing his duties, was severely burned when he was thrown from the motor vehicle that he was operating.  He brought suit under the FELA. The Supreme Court defined "common carrier by railroad" to mean "one who operates a railroad as a means for carrying the public—that is to say, a railroad company acting as a common carrier."  *Id*. at 540 [citing to *Wells Fargo & Co. v. Taylor*, 254 U.S. 175, 187-88 (1920)]  The Supreme Court reasoned that in conducting its business, Pacific Fruit would find it necessary, from time to time, to "perform railroad functions," i.e., service its tracks and railcars and move the railcars from station to station even though they are leased to railroads for

transportation in interstate commerce.  Hence, the Supreme Court did not depart from 60 years of history, reasoning that Congress had defined railroading narrowly under the Act and that Congress had not seen fit to extend coverage to activities that might be closely related to railroading.  Therefore, the FELA did not apply.

In *Kieronski*, the Sixth Circuit Court of Appeals acknowledged the four-part test set forth by the Fifth Circuit Court of Appeals, but looked beyond the "list of considerations" and focused on the several categories into which a "common carrier" might fall.  In this regard, the court identified, as categories, "in-plant rail facilities", "private carriers" and the "linking carrier" or common carrier.  The court instructed that an "in-plant" carrier may be connected to a common carrier and have a quite extensive network of tracks, yet not become a common carrier merely by its connection. *Kieronski*, 806 F.2d, *Id*. at 109.  Likewise, the "private carrier", which may haul cargo for others, pursuant to individual contracts but separately with each customer, is not necessarily a common carrier.  *Id*.  However, when a carrier links two or more common carriers [a "linking carrier"], it becomes part of a common carrier system and, even though standing alone would not be a common carrier, becomes so by its linking.

Finally, in *Lone Star*, the Fifth Circuit set forth the following considerations as to whether Lone Star had become a common carrier.  First, does the carrier actually perform rail service; second, is the service performed part of the total rail service contracted for by a member of the public; third, is there a common ownership between the carrier and a common carrier that performs interstate rail transportation; and fourth, is there remuneration for the services performed, such as a fixed charge, from a railroad or receipt of a percent of the profits from a railroad.  *Id*. at 647.

It is undisputed that Bayer owns the Baytown Facility and that several chemical processing companies lease sites on the Facility where materials are processed and loaded for transport in interstate commerce. These companies [Lessees] have contractual arrangements with Union Pacific and BNSF Railway to transport their products in interstate commerce from the Baytown Facility. Likewise, Bayer utilizes these same common carriers to transport the chemicals that it produces from the Baytown Facility into interstate commerce. However, the evidence fails to show that Bayer's railcar operations relate to operations beyond its own chemical manufacturing business or the Facility. In accomplishing its mission, Bayer moves railcars, sorts and switches railcars delivered to it and delivers them to the various plants or Lessees where products are loaded. After a product is loaded, the railcars are moved to a central point within the Facility where the railroad companies enter and "couples up" with the railcars and takes them to their destinations.

Another aspect of Bayer's operations concerns the relationship between Bayer and the Lessees that have leased space from Bayer. Bayer admits performing in-plant transportation functions for its Lessees. However, the evidence does not support a finding that Bayer extends these services to companies outside its Facility. In this regard, Bayer uses its railcars to move its own products from the loading area to the coupling area. There is no evidence that the two switch engines that move railcars within the Facility are used for long-distance transportation, particularly in interstate commerce. Finally, the evidence is undisputed that Bayer does not own an interest in either Union Pacific or BNSF Railway or any common carriers utilized by Bayer to transport its product to their destinations. And, there is no evidence that Bayer receives compensation from either railroad for the switching that it performs for the Lessees.

The plaintiff, however, asserts that Bayer's relationship with its Lessees is sufficient to form a nexis to interstate commerce whereby Bayer becomes a common carrier.  The plaintiff relies on the testimony of Bayer employees.  Robin Knowles, a former site logistics manager for Bayer testified that…[Bayer] "receives[d] compensation to help maintain the rails…" via contracts with the Lessees.  In addressing this argument, the Court finds that it is undisputed that Union Pacific, for example, delivers tank railcars to the Baytown Facility, and that Bayer delivers those railcars to the appropriate Lessee within the Facility utilizing its switch engines.  However, it is undisputed that the service performed, i.e., transporting railcars across Bayer's tracks and within the Facility, is the extent of the service provided to the Lessees.

Finally, the plaintiff points to occasions when Bayer provided rail service for HL&P where its switch engines operate outside the Facility.  It is undisputed that on these occasions Bayer used its switch engines and its switch crew to push or pull railcars owned by third parties along its rail lines to HL&P.  The railcars that were transported were initially on Bayer property and remained so until the railcars reached HL&P's property.  It is also undisputed that HL&P did not pay Bayer a fee for the service, apparently receiving any remuneration from the third parties.  Yet again, these services were not associated with connecting common carriers or operating in interstate commerce.  *Ibid.*

VII.   <u>CONCLUSION</u>

The Court is of the opinion that Bayer is not a common carrier.  From the undisputed evidence the Court concludes that:  (a) Bayer's railroad services do not link two common carriers as a means for the two to accomplish their tasks; (b) Bayer utilizes its rail tracks to connect common carriers to other processing plants [Lessees] on its Facility; (c) the use of its switch engines for the convenience of its Lessees and HL&P, also not common carriers, did not further

the contractual obligations of a common carrier; (d) the services performed by Bayer were not the services that a common carrier had contracted with others to perform as a part of the common carrier's mission; and (e) Bayer merely connects common carriers to its Facility for its own benefit and that of its Lessees.

Therefore, the Court concludes that Bayer is not a common carrier and its motion for summary judgment should be and it is hereby GRANTED.

IT IS SO ORDERED.

SIGNED at Houston, Texas this 14th day of October, 2010.

Kenneth M. Hoyt
United States District Judge